**FILED**
Apr 09 2021
10:20 am
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ dominicf    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

November 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>JIMMY HUI BANH (1),<br>JOSE ANTONIO TORRESDAY (2),<br>  aka "Pepe,"<br>TINA SENKET (3),<br>JIMMY LU (4),<br>  aka "Nam Van Lu,"<br>  aka "Nam Thao,"<br>ARCADIO MAMURI CRUZ (5),<br>  aka "Bangsta,"<br>  aka "Archie,"<br>MARK ANONAS ARCELAO (6),<br>  aka "Lil Tipsy,"<br><br>  Defendants. | Case No. __'21 CR1110 H__<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 – Conspiracy; Title 18, U.S.C., Sec. 1955 – Illegal Gambling Business; Title 21, U.S.C., Sec. 856(a)(1) – Maintaining a Drug-Involved Premises; Title 18, U.S.C., Secs. 922(g)(1) and 924(a)(2) – Felon in Possession of a Firearm; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 18, U.S.C., Secs. 924(d) and 981(a)(1)(C), Title 21, U.S.C., Sec. 853, Title 18, U.S.C., Secs. 981(a)(1)(C) and 1955(d), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

The grand jury charges:

//

//

ADBL:cms:San Diego
4/9/21

## Count 1

### CONSPIRACY

[18 U.S.C. § 371]

1. Beginning at a date unknown to the grand jury and continuing up to on or about the date of this Indictment, within the Southern District of California, and elsewhere, defendants JIMMY HUI BANH, JOSE ANTONIO TORRESDAY, aka "Pepe", TINA SENKET, JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", (collectively hereinafter "Defendants"), and others known and unknown to the grand jury, did knowingly and intentionally conspire to commit offenses against the United States as set forth below:

   a. Operating an Illegal Gambling Business, in violation of Title 18, United States Code, Section 1955, and,

   b. Maintaining a Drug-Involved Premises, in violation of Title 21, United States Code, Sections 856(a)(1) and Title 18, United States Code, Section 2.

### MANNER AND MEANS OF CONSPIRACY

2. In furtherance of this conspiracy and to effect the objects thereof, Defendants and other co-conspirators utilized the following manner and means, among others:

   a. It was a part of the conspiracy that the Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments in violation of California Penal Code, Sections 330a and 330.1.

   b. It was a further part of the conspiracy that Defendants and other co-conspirators engaged in business of operating illegal gambling establishments and maintaining drug involved premises by equipping the illegal gambling establishments with electronic gambling

machines which were programmed with several games of chance such as poker, blackjack, keno, jacks or better, and slot games.

      c.   It was a further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by operating the gambling establishments 24 hours a day, seven days a week, with some shutting down in the early morning hours and starting up again in the afternoons.

      d.   It was a further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by outfitting the illegal gambling establishments with exterior and interior video surveillance cameras, which were often monitored remotely by the establishment owners and managers. Those locations equipped with surveillance equipment often contain monitors showing live feed of the video surveillance.

      e.   It was a further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by conducting audits of the gambling machines, which often took in more than $3000 per day. Such audits were often carried out several times in a twenty-four hour period when the bank roll reached a specified amount, such as $2,000. This was done to reduce potential losses to the business from robbery and law enforcement seizures. The employees kept the patrons at a distance or directed them to step outside during the audits to reduce the risk of patrons robbing the business. The audits were conducted by trusted employees who used a key to unlock and open the gambling machines, retrieved the money from inside of the machines,

3

photographed the master audit screen of each machine showing the cash in, cash out (winnings), and net gain/profit per machine, and clearing the screen after each audit. Employees provided the master audit screen photographs with the owners/managers. The employees would also document the cash in, cash out, net gain, loans to customers, and other information in paper ledgers.

    f.   It was further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by taking actions to conceal the identity of the true owners of the gambling establishments. In order to conceal their identities, the owners would frequently avoid physically entering their own establishments, but instead relied on trusted associates to open, operate and maintain the illegal gambling dens, and to rent property and obtain utilities for these establishments, to reduce the likelihood that the true owners would be identified by law enforcement.

    g.   It was further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by employing individuals in specific roles to operate the illegal gambling establishments. The roles included:

    h.   A doorman who acted as an enforcer to handle disturbances within the illegal gambling establishment, screened patrons for entry into the illegal gambling establishment, monitored the video surveillance equipment, and reacted to law enforcement presence.

    i.   A "banker" who carried the "bank roll," meaning the money to provide change and winnings to customers. One or two bankers worked inside each establishment at any given time.

j. A money courier who brought additional cash to employees working inside the establishments, collected money from the regular audits, and transported profits to the owners. The money courier also acted as a manager who directed employees' actions and made decisions on behalf of the owners at these locations.

k. It was a further part of the conspiracy that Defendants and other co-conspirators communicated by electronic means, such as cellular telephones and messaging applications, and discussed the operation of illegal gambling establishments.

l. It was further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by allowing patrons to possess and use controlled substances, typically methamphetamine, while gambling. The ability to consume controlled substances while gambling enticed the patrons to frequent the illegal gambling establishments.

m. It was further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by allowing the distribution of controlled substances inside the illegal gambling establishments patrons were enticed to frequent the illegal gambling establishment.

n. It was further part of the conspiracy that from at least as early as November 2019 until June 2020, defendants JIMMY HUI BANH, and JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", operated an illegal gambling establishment at 4082 Cherokee Avenue, San Diego, California, a two-bedroom single detached residence just east of Edison Elementary

School, with approximately 8 electronic gambling machines ("Gaming Den #1").

o.  It was further part of the conspiracy that from at least as early as April 2020 until June 25, 2020, defendants JIMMY HUI BANH, JOSE ANTONIO TORRESDAY, aka "Pepe", and TINA SENGKET, operated an illegal gambling establishment at 3024 Menlo Street, San Diego, California, a three-bedroom residence, with 17 electronic gambling machines ("Gaming Den #2").

## OVERT ACTS

3.  In furtherance of this conspiracy and to effect the objects thereof, the following overt acts, among others, were committed within the Southern District of California, and elsewhere:

a.  On February 28, 2020, defendant JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", provided change and gambling winnings to a cooperating individual at Gaming Den #1. In addition, defendant JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", offered methamphetamine and pipe to a cooperating individual at Gaming Den #1.

b.  On March 12, 2020, defendant JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", provided change to a gambling patron at Gaming Den #1.

c.  On April 24, 2020, a Gaming Den #1 employee and another individual sold a sawed-off shotgun to a cooperating individual at Gaming Den #1.

d.  On May 28, 2020, defendant JIMMY BANH communicated by instant message with Lorrie Tirona stating "I moved to my new spot…bigger and better…3024 Menlo."

e.  On June 6, 2020, defendant TINA SENGKET communicated with defendant JIMMY BAHN by text message stating, "There's more bankroll he just handed me whatever he got left..idk what u want to do?"

6

      f.    On June 16, 2020, defendant JIMMY BANH held the bankroll for purposes of providing change and gambling winnings to patrons at Gaming Den #2.

      g.    On June 16, 2020, defendant JIMMY BANH agreed to obtain approximately ¼ pound of methamphetamine for cooperating individual at Gaming Den #2.

      h.    On June 16, 2020, defendant JOSE ANTONIO TORRESDAY, aka "Pepe", paid gambling winnings to patrons at Gaming Den #2.

      i.    On June 16, 2020, defendant TINA SENKET provided change and paid gambling winnings to patrons at Gaming Den #2.

All in violation of Title 18, United States Code, Section 371 and Title 18, United States Code, Section 2.

## Count 2

### ILLEGAL GAMBLING BUSINESS

### [18 U.S.C. § 1955]

4. The allegations set forth in paragraphs 2 and 3 are realleged and incorporated by reference as if fully set forth herein.

5. Beginning on a date unknown to the grand jury and continuing up to on or about the date of this indictment, within the Southern District of California and elsewhere, defendants JIMMY HUI BANH, JOSE ANTONIO TORRESDAY, aka "Pepe", TINA SENKET, JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", and others, knowingly and intentionally conducted, financed, managed, supervised, directed, and owned all and part of an illegal gambling business involving the operation of electronic gambling machines, which gambling business was a violation of the law of the State of California in which it was conducted (that is, in violation of California Penal Code, Sections 330a, and 330.1) and which involved at least five persons who conducted, financed, managed, supervised,

directed, and owned all and part of the illegal gambling business, and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day; in violation of Title 18, United States Code, Section 1955 and Title 18, United States Code, Section 2.

### Count 3

### MAINTAINING A DRUG INVOLVED PREMISES

[21 U.S.C. § 856(a)(1)]

6. The allegations set forth in paragraphs 2 and 3 are realleged and incorporated by reference as if fully set forth herein.

7. Beginning on a date unknown to the grand jury, but at least as early as December 2019, and continuing up to on or about September 10, 2020, within the Southern District of California, defendants JIMMY HUI BANH, JOSE ANTONIO TORRESDAY, aka "Pepe", JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", and others known and unknown to the grand jury knowingly opened, leased, rented, used and maintained any place, permanently and temporarily, namely: 4082 Cherokee Avenue, San Diego, California; for the purpose of manufacturing, distributing, and using controlled substances; all in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

### Count 4

### MAINTAINING A DRUG INVOLVED PREMISES

[21 U.S.C. § 856(a)(1)]

8. The allegations set forth in paragraphs 2 and 3 are realleged and incorporated by reference as if fully set forth herein.

9. Beginning on a date unknown to the grand jury, but at least as early as December 2019, and continuing up to on or about October 15, 2020, within the Southern District of California, defendants JIMMY HUI

BANH, JOSE ANTONIO TORRESDAY, aka "Pepe", TINA SENKET, and others known and unknown to the grand jury knowingly opened, leased, rented, used and maintained any place, permanently and temporarily, namely: 3024 Menlo Avenue, San Diego, California; for the purpose of manufacturing, distributing, and using controlled substances; all in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

## Count 5

### FELON IN POSSESSION OF A FIREARM

[18 U.S.C. §§ 922(g) & 924(a)(2)]

10. On or about April 24, 2020, within the Southern District of California, defendants ARCADIO MAMURI CRUZ, aka "Bangsta", aka "Archie", and MARK ANONAS ARCELAO, aka "Lil Tipsy" each knowing his status as a convicted felon, that is, a person who had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm that traveled in and affected interstate commerce, to wit: a Remington Model 870 Express Magnum, 12 Gauge shotgun with obliterated serial number (later restored: B732275M); in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) and Title 18, United States Code, Section 2.

## Count 6

### FELON IN POSSESSION OF A FIREARM

[18 U.S.C. §§ 922(g) & 924(a)(2)]

11. On or about June 25, 2020, within the Southern District of California, defendant JIMMY HUY BANH, knowing his status as a convicted felon, that is, a person who had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm that traveled in and affected interstate

commerce, to wit: .38 caliber S&W Airweight revolver; in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## FORFEITURE ALLEGATIONS

12. The allegations contained in Counts 1 through 6 are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853.

### Forfeiture Allegation as to Count 1

13. Upon conviction of the offense alleged in Count 1 of this Indictment, and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c), defendants JIMMY HUI BANH, JOSE ANTONIO TORRESDAY, aka "Pepe", TINA SENKET, JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", shall forfeit to the United States all their rights, title and interest in any and all property, real or personal, which constitutes or is derived from proceeds, traceable to the offense, and any property, including, but not limited to, currency used in violation of the offense.

### Forfeiture Allegation as to Count 2

14. Upon conviction of the offense alleged in Count 2 of this Indictment, and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c), defendants JIMMY HUI BANH, JOSE ANTONIO TORRESDAY, aka "Pepe", TINA SENKET, JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", shall forfeit to the United States all their rights, title and interest in any and all property, real or personal, which constitutes or is derived from

proceeds, traceable to the offense, and any property, including, but not limited to, currency used in violation of the offense.

//

### Forfeiture Allegation as to Counts 3 and 4

15. Upon conviction of any of the felony offenses alleged in Counts 3 and 4 of this Indictment, said violations being punishable by imprisonment for more than one year and pursuant to Title 21, United States Code, Section 853(a)(1) and 853(a)(2), defendants JIMMY HUI BANH, JOSE ANTONIO TORRESDAY, aka "Pepe", JIMMY LU, aka "Nam Van Lu", aka "Nam Thao", and TINA SENKET shall forfeit to the United States all rights, title and interest in any and all property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as the result of the offenses, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts 3 and 4 of this Indictment.

### Specific Property

16. Based on the above forfeiture allegations for Counts 1 through 4, the property to be forfeited includes, but is not limited to: ten table top electronic gambling machines seized from 3024 Menlo Ave, San Diego, CA; six full size electronic gambling machines seized from 3024 Menlo Ave, San Diego, CA; and one 3/4 electronic gambling machine seized from 3024 Menlo Ave, San Diego, CA.

### Forfeiture Allegation as to Count 5

17. Upon conviction of the offense alleged in Count 5 of this Indictment, defendants ARCADIO MAMURI CRUZ, aka "Bangsta", aka "Archie", and MARK ARCELAO, aka "Lil Tipsy", shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), and Title 28,

United States Code, Section 2461(c), all firearms and ammunition involved in the commission of the offense, including but not limited to, a Remington Model 870 Express Magnum, 12 Gauge shotgun with obliterated serial number (later restored: B732275M).

## Forfeiture Allegation as to Count 6

18. Upon conviction of the offense alleged in Count 6 of this Indictment, defendant JIMMY HUY BANH, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in the commission of the offense, including but not limited to, a .38 caliber S&W Airweight revolver.

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty;

//
//
//
//
//
//
//
//

1 //

2 //

3 it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above as being subject to forfeiture.

8 All pursuant to Title 21, United States Code, Section 853, Title 18, United States Code, Sections 981(a)(1)(C), 1955(d), and 924(d), and Title 28, United States Code, Section 2461(c).

DATED: April 9, 2021.

RANDY S. GROSSMAN
Acting United States Attorney

By: _____
A. DALE BLANKENSHIP
Assistant U.S. Attorney

By: _____
MATTHEW BREHM
Assistant U.S. Attorney